IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**BERNESTINE BULLARD**                                                      **PLAINTIFF**

**VS.**           **CASE NO.:  5:15-cv-00300-JM-JTR**

**ARKANSAS DEPARTMENT**
**OF CORRECTION**                                                            **DEFENDANT**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Bernstine Bullard ("Bullard") is an African-American female who applied for a promotion to fill the newly created position of Assistant Director of Reentry with Arkansas Department of Corrections ("ADC"). After ADC selected John Wheeler ("Wheeler"), a Caucasian male, for the position, Bullard initiated this

1

action. She alleges that she was not promoted because of her race and gender, in violation of Title VII of the Civil Rights Act, as amended. *See* Complaint, *Doc. 1*.

On February 1, 2017, ADC filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Facts.[1] *Docs. 26-28*. Bullard failed to file a Response opposing ADC's Motion for Summary Judgment. On March 15, 2017, the Court entered an Order advising Bullard that, because of her failure to respond to the summary judgment motion papers filed by ADC, all facts set forth in ADC's Statement of Facts are now admitted, as provided for in Local Rule 56.1. *Doc. 39*.

Thus, based on the undisputed facts set forth in ADC's Statement of Facts and its unopposed Motion for Summary Judgment, the Court must now decide if ADC is entitled to judgment as a matter of law. *See Interstate Power Co. v. Kansas City Power & Light*, 992 F.2d 804, 807 (8th Cir. 1993) ("Even if a motion for summary judgment on a particular claim stands unopposed, the district court must

---

[1] Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

"While employment discrimination cases are often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment, and there is no separate summary judgment standard for employment discrimination cases." *Fercello v. Cnty. Of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010).

still determine that the moving party is entitled to judgment as a matter of law on that claim.").

## II. Recitation of Material Facts

The following facts, all of which are contained in the Statement of Undisputed Material Facts or supporting exhibits tendered by ADC, are uncontested and admitted:

1.      Beginning June 30, 2014, ADC advertised a job opening for Assistant Director for Reentry. Former ADC Director Ray Hobbs ("Director Hobbs") created this new position to supervise ADC's various efforts to assist inmates leaving prison and reentering society.[2]

2.      Because this was a new position, Director Hobbs could have appointed someone to fill it, without advertising or conducting interviews. He elected to advertise the position and to interview applicants.[3]

3.      The position was advertised as requiring at least "a bachelor's degree in criminal justice, public administration, or a related field." Additionally, a desired qualification was a: "Masters degree in criminal justice, public administration, or a related field."[4]

---

[2] Stmt. of Facts, *Doc. 28* at ¶ 1;  Aff. of Wendy Kelley, *Doc. 26-16* at ¶ 6.
[3] Stmt. of Facts, *Doc. 28* at ¶ 36-¶ 37.
[4] *Id*. at ¶ 7.

4.      Thirty-five men and women applied for the position of Assistant Director for Reentry.[5]

5.      The Human Resources Department determined whether each applicant met the minimum qualifications for the job. It determined that Bullard met the minimum requirements for the job.[6] It also determined that Wheeler, the applicant ultimately selected to fill the position, also met the minimum requirements for the job.[7]

6.      Bullard admitted that the Human Resources Department did not discriminate against her.[8]

7.      Sixteen people, including Bullard and Wheeler, were selected to be interviewed for the position of Assistant Director for Reentry.[9]

8.      All sixteen candidates were interviewed by the same three-person panel comprised of two women and one male: then-Chief Deputy Wendy Kelley

---

[5] *Id*. at ¶ 38.
[6] *Id*. at ¶ 6.
Bullard has a Bachelor's degree in Criminal Justice and a Masters degree in Business Administration. Bullard *Doc. 1* at ¶7 on p. 2, p. 7. Beginning in August of 2004, Bullard began working at ADC as a Correctional Counselor. She was later promoted to Correctional Rehab Facility Supervisor, where she worked in Pre-Release and Reentry Programs. *Doc. 1* at p. 2; *Doc. 25* at p. 2.
[7] Wheeler had a Bachelor's degree in Biblical Studies from Ouachita Baptist University and a Masters degree in Religious Education from Liberty University. *Doc. 28* at ¶ 12. Beginning in October 2009, Wheeler was ADC's Administrator of Chaplaincy Services and was responsible for all chaplaincy programming statewide. *Id*. at ¶ 16.
[8] *Doc. 28* at ¶ 7.
[9] *Id*. at ¶ 39.

4

("Kelley"),[10] General Counsel Jan Scussel ("Scussel"), and Deputy Director Marvin Evans, Jr ("Evans").[11]

9. During the panel interview, each applicant was asked the *same set of questions*, which were designed to evaluate each applicant's knowledge, skills and abilities. Each interviewer assigned numerical scores to each applicant's response to those questions.[12]

10. Each applicant was also asked to write a response to a question concerning prison overcrowding. Their written responses were also evaluated by Kelley, Scussel, and Evans.[13]

11. After the interviews were completed, the Human Resources Department compiled a composite interview score for each applicant. Bullard's composite interview score was 47.76. Wheeler's composite interview score was 52.23.[14]

12. Each applicant's composite interview score was then added to their pre-score, which consisted of points awarded for being a veteran, educational attainment, and experience. Bullard and Wheeler each received 5 points for education and 10

---

[10] Following Director Hobbs' retirement, Wendy Kelley was promoted to Director of ADC. *See* Doc. 28 at ¶ 78.
[11] *Id*. at ¶¶ 39-40.
[12] *Id*. at ¶¶ 41-42.
[13] *Id*. at ¶¶ 43-44.
[14] *Id*. at ¶¶ 45-46.

points for experience. However, Wheeler received five additional points because he was a veteran, and Bullard was not.[15]

13. Thus, Bullard had a total score of 62.76 and Wheeler had a total score of 72.23. *Id*. at ¶¶ 48-49.

14. Four applicants, including Bullard and Wheeler, were selected for a second interview, which was conducted by Director Hobbs. He was the final decision maker on whom to select as Assistant Director for Reentry.[16]

15. While money was appropriated and available to pay the salary of the new Assistant Director for Reentry, no money was appropriated or available to hire any support staff. Thus, Director Hobbs was looking for a candidate with vision, who was a self-starter, and who could set goals without assistance.[17]

16. During her second interview, Bullard told Director Hobbs that her plan "was going to require more staff and more money" . . . "to be able to get the ball rolling in those areas."[18]

17. During his second interview, Wheeler presented Director Hobbs with a detailed, written Reentry Plan that included short-term, medium-term, and long-term

---

[15] *Id*. at ¶¶ 47-49.
[16] *Id*. at ¶¶ 50, 66.
[17] *Id*. at ¶¶ 52, 64.
[18] *Id*. at ¶ 53.

6

objectives. Wheeler proposed to use volunteers to accomplish his plan objectives, without the need for additional staff or funding.[19]

18. Director Hobbs concluded that Wheeler's prior experience as Administrator of Chaplaincy Services, his work with outside volunteers, and his involvement in programs related to inmate reentry gave him an advantage as a candidate for the position.[20]

19. Director Hobbs concluded that, because Wheeler was the best-qualified candidate for the position, he should be hired as the new Assistant Director of Reentry.[21]

20. The fact that Bullard was a woman played no role in Director Hobbs' promotion decision.[22]

21. Director Hobbs is an African-American, as is Bullard.[23] In selecting Wheeler, Director Hobbs did not discriminate against Bullard on the basis of her race.[24]

---

[19] *Id.* at ¶ 55, 56.
[20] *Id.* at ¶ 59; *Doc. 26-14*, Hobbs Aff. at ¶ 16.
Bullard admitted that Wheeler's prior experience in chaplaincy could be related to reentry. *Id.* at ¶ 84.
[21] *Id.* at ¶ 66.
[22] *Id.* at ¶ 69.
[23] The Court takes judicial notice that Director Hobbs, who has appeared as a witness in other cases before the Court, is an African-American.
[24] *Id.* at ¶ 71.

22.     Bullard has offered *no facts* to support her claims of gender and race discrimination.[25]

23.     Bullard has offered no evidence of any comments, writings, emails, documents or records of any kind that support her claim that she was not promoted because of her gender or race, and she is unaware of the existence of any such evidence.[26]

### III. Discussion

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . .[or] sex."  42 U.S.C. § 2000e-2(a)(1).  Discrimination occurs when race or sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Because Bullard offers no "direct evidence" of discriminatory intent, her Title VII discrimination claim must be analyzed using the *McDonnell Douglas*[27] burden-shifting framework.  *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc).

---

[25] *Id*. at ¶ 81 (Bullard admits she has no direct evidence);  *Doc. 39*.
[26] *Id*. at ¶ 82, *Doc. 26-1 at 27-28*.
[27] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

First, Bullard has the threshold obligation of establishing a prima facie case of employment discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 801-804. In a hiring context, Bullard must show that: (1) she is in a protected class (female and African-American); (2) she was qualified for the promotion; (3) she was denied the promotion; and (4) the employer filled the position with a person not in the same protected class. *Torgerson*, 643 F.3d at 1044. It is undisputed that Bullard, an African-Amerian female, was qualified for the position which was filled by Wheeler, a white male. Thus, Bullard has established a prima facie case.

Establishing a prima facie case shifts the burden of production to ADC to "articulate a legitimate, nondiscriminatory reason for not hiring" Bullard. *Id*. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir.1999). ADC has more than satisfied its burden of production by providing the Court with a detailed explanation of the hiring process followed to fill the position. Bullard has admitted and does not contest any of the ADC's facts supporting Director Hobbs' decision to promote Wheeler as the Assistant Director of Reentry. The facts establish that Director Hobbs, the decision maker, selected Wheeler based solely on his determination that Wheeler was the best-qualified candidate.

At the third and final phase of the *McDonnell Douglas* burden shifting framework, Bullard has the burden of producing "evidence sufficient to create a genuine issue of material fact regarding whether [ADC's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Torgerson*, 643 F.3d at 1044 (omitting citation and internal quotations). At this point, her burden to show pretext "merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination." *Id*. (omitting citations and internal quotations). Bullard may prove pretext either by showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Id*. at 1047 (omitting citation, internal quotes, ellipsis and brackets).

"To support a finding of pretext, the applicant must show that [the employer] hired a *less* qualified applicant." *Torgerson,* 643 F.3d at 1049 (brackets omitted). "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Id.* (ellipsis omitted). *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995) (summary judgment proper where there was no evidence plaintiff's qualifications surpassed or even equaled those of individual who was hired).

Bullard has presented *no facts* to dispute ADC's Statement of Undisputed Material Facts, which establish that Director Hobbs promoted Wheeler because he

10

was the most qualified candidate. Accordingly, Bullard has failed to meet her burden, at the summary judgment stage, to present evidence to support her claim that the real reason she was not named Assistant Director of Reentry was her gender or her race. Therefore, ADC is entitled to summary judgment on Bullard's claims of gender and race discrimination.

### IV. Conclusion

Because the undisputed and admitted facts do not allow a reasonable jury to return a verdict in Bullard's favor on her discrimination claims,[28] the Court concludes that ADC is entitled to summary judgment.

IT IS THEREFORE RECOMMENDED THAT Defendant Arkansas Department of Corrections' Motion for Summary Judgment, *Doc. 26*, be GRANTED and that all claims asserted by Plaintiff Bernstine Bullard be DISMISSED, WITH PREJUDICE.

DATED this 30th day of March, 2017.

                                                _____
                                                UNITED STATES MAGISTRATE JUDGE

---

[28] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).